U.S. Bankruptcy Court
District of Idaho
Filed: August 25, 2004
at 10:00 a.m.
By: JC

# IN THE UNITED STATES BANKRUPTCY COURT

## FOR THE DISTRICT OF IDAHO

| | | |
|---|---|---|
| IN RE | ) | |
| | ) | |
| GARY PETERSON and | ) | Case No. 04-01469 |
| LISA PETERSON, | ) | |
| | ) | |
| | ) | |
| Debtors. | ) | MEMORANDUM OF DECISION |
| | ) | |
| | ) | |
| IN RE | ) | |
| | ) | |
| ROBERT WHITTLE, | ) | Case No. 04-01577 |
| | ) | |
| Debtor. | ) | |
| | ) | |
| | ) | |
| IN RE | ) | |
| | ) | |
| ROBERT HOUSE and | ) | Case No. 04-01748 |
| MARY HOUSE, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |

MEMORANDUM OF DECISION - 1

AO 72A
(Rev. 8/82)

|  |  |  |
|---|---|---|
| IN RE | ) | |
| | ) | |
| | ) | |
| ANTHONY CRAFT and | ) | Case No. 04-01851 |
| STELLA CRAFT, | ) | |
| | ) | |
| Debtors. | ) | |
| | ) | |
| | ) | |

## INTRODUCTION

These four chapter 13 cases have an issue in common.  In each, the attorney of record for the consumer debtors, Martin Martelle ("Martelle"), did not attend the debtors' § 341(a) meeting of creditors and their examination at that meeting.[1]  He, instead, sent a different attorney in his place, and paid that attorney.

At a recent hearing in one of these cases, the Court questioned Martelle about the particulars of this practice.[2]  While no ruling was then made, the Office of the United States Trustee ("UST") soon thereafter filed motions in each of these cases seeking the Court's review and reduction of Martelle's attorneys' fees, and disallowance and disgorgement of fees to the substitute attorney.

Following the filing of briefs, affidavits and other materials, the UST's motions were argued and submitted on August 16, 2004.  The Court finds the

---

[1]  While § 341(a) requires a meeting of creditors, the examination of the debtors at that meeting is mandated by § 343.

[2]  Chapter 13 trustee, Bernie Rakozy, brought the matter to the Court's attention in his "Trustee's Findings and Recommendations" filed prior to the chapter 13 confirmation hearing in one of the cases.  The § 341(a) minutes in each case reflected the substitute counsel's appearance.

MEMORANDUM OF DECISION - 2

motions well taken, and they will be granted.  This Decision constitutes the Court's

factual findings and legal conclusions.  Fed. R. Bankr. P. 7052, 9014.

## BACKGROUND AND FACTS

The facts are in almost all regards undisputed.  They are established by

Martelle's affidavit, outlining his practices in these four cases and in general, and by

the Court's own record in each case.[3]

Martelle agreed to represent the debtors in these four chapter 13 cases.

Nothing submitted establishes that there was ever any written fee agreement

between Martelle and his clients, and the terms of the engagement appear to be

documented solely by the statement he filed with the Court under Fed. R. Bankr. P.

2016(b).[4]

With slight variances, each of the four Rule 2016(b) statements here

discloses that Martelle would represent the debtors and charge a "flat fee" of

$1,000.00 for the chapter 13.[5]  However, he also indicates in these disclosures that

---

[3] The Court takes judicial notice of its files and records.  Fed. R. Evid. 201.

[4] In brief, Rule 2016(b) obligates a debtor's attorney to file and to transmit to the UST, within 15 days of the petition's filing, the statement regarding compensation paid or to be paid that is required under § 329 of the Code.  The Rule requires that the statement also indicate whether any part of the compensation has been or is to be shared with any other entity, and the particulars of any such agreement, unless that agreement is "with a member or regular associate of the attorney's law firm."  A supplemental statement is required within 15 days after any payment or agreement not previously disclosed.

[5] This would keep Martelle under the presumptively allowable fee amount for each case, eliminating the need to file a detailed affidavit of services in support of his requested compensation.  *See, e.g., In re Gebert*, 99.4 I.B.C.R. 137, 138 (Bankr. D. Idaho 1999) (discussing use and operation in this District of such presumptively allowable attorneys' fees in chapter 13).

MEMORANDUM OF DECISION - 3

AO 72A
(Rev. 8/82)

he would keep track of his time, at a rate of $175.00 per hour, and charge the debtors any amounts exceeding that $1,000.00 fee.[6]

In three of the four cases, partial payments toward the $1,000.00 amount were made, and the parties contemplated that the balance of any allowable fees would be paid through the chapter 13 plan. In the fourth, only costs were advanced prepetition, and all fees were to be funded by debtors' plan.[7]

There is nothing in any of the Rule 2016(b) statements to indicate any attorney other than Martelle would have a role in representing the debtors; in fact, Martelle affirmatively states: "I have not agreed to share the [disclosed] compensation with any other person."

In these four cases, another attorney, Gregory Swanson ("Swanson"), appeared and represented the debtors at the § 341(a) meeting of creditors and their examination under § 343. Swanson did not file any Rule 2016(b) statement or disclosure.[8]

---

[6] In essence, the flat fee is nothing of the kind. It is a minimum fee.

[7] In *Peterson*, the debtors paid a retainer of $606.00 plus $194.00 in costs, to be applied against the minimum fee of $1,000.00, with debtors agreeing to pay $175.00 per hour for services exceeding the retainer amount. Case No. 04-01469, Doc. No. 2. In *Whittle*, the debtor paid a retainer of $506.00 toward fees and $194.00 in costs, on the same basis. Case No. 04-01577, Doc. No. 2. In *House*, debtors paid $600.00 toward fees and $194.00 toward costs. Case No. 04-01748, Doc. No. 2. And in *Craft*, debtors advanced and paid only $194.00 in costs, and agreed to pay all fees through the plan calculated at $175.00 per hour, again with a $1,000.00 minimum. Case No. 04-01851, Doc. No. 2.

[8] Swanson also did not file any responsive pleadings, or appear at the hearing on August 16, even though he was an adverse party under the UST's motions.

MEMORANDUM OF DECISION - 4

Martelle explained the relationship between himself — and his professional corporation Martelle Law Offices[9] — and Swanson. Martelle indicated that he and Swanson have "separate law practices" (with Swanson doing business as Swanson Law Offices).[10] Swanson and Martelle are separately listed in the directory of the Idaho State Bar, in local legal services directories (e.g., "Tucker Legal Directory") and in telephone directories. None of these resources indicate Swanson is an associate, a member or "of counsel" in, with or to Martelle or Martelle Law Offices. Swanson is not shown on Martelle's stationary or business cards, nor is Martelle on Swanson's.

Swanson conducts his practice out of an office that he rents from Martelle, in the same building where Martelle practices. Swanson "pays" for that office by performing ten hours of legal work for Martelle each month.[11]

Martelle hires Swanson on an as needed basis to assist with legal research, drafting pleadings, meeting with clients, conducting discovery, making court appearances, and attending § 341(a) meetings. Martelle first engaged Swanson on this sort of basis in November, 2003. Martelle indicates Swanson's work is, in the

---

[9] The Court was advised that Martelle incorporated Martelle Law Offices as a professional corporation, and he provides his legal services to the public through that entity. See generally Idaho Code § 30-1301, et seq. Martelle is its only shareholder.

[10] The Court was not told if Swanson had also formed a professional corporation.

[11] The only financial aspects of this relationship that were specifically discussed were the office "rent" payment through Swanson's services, Martelle's payment to Swanson for other legal work at a rate of $30.00 per hour, and the fact that each lawyer paid for and maintained his own personal malpractice insurance.

MEMORANDUM OF DECISION - 5

bankruptcy context, essentially limited to research and appearing for debtors at

§ 341(a) meetings. It does not appear that Swanson has signed any pleadings for

the debtors in these four cases, and Martelle indicated that he felt personally

responsible to make all appearances in his bankruptcy debtors' cases other than at

the § 341(a) meetings.

In nonbankruptcy matters, Martelle allows Swanson to sign pleadings

bearing the Martelle Law Offices caption as well as correspondence on Martelle's

firm letterhead, even though Swanson's name does not appear on that letterhead.[12]

Martelle indicates this process is "routine" and evidences that Swanson "is held out

to parties that he deals with as being an attorney with Martelle Law Offices." *See*

Case No. 04-01469, Doc. No. 22 at 2.[13] Martelle's bankruptcy clients are told that

"there are two attorneys at Martelle Law Offices" and that either of them may

appear at the § 341 meetings. *Id.* at 3.

---

[12] The Court was provided with several examples of pleadings and correspondence.
*See, e.g.,* Case No. 04-01469, Doc. No. 22 (Affidavit of Martin J. Martelle) (attached
exhibits). Some of these pleadings show, in the captions, the names of both Martelle and
Swanson immediately above the name "Martelle Law Offices" and certain of the pleadings
are signed "Martelle Law Offices, by: Gregory N. Swanson."

[13] The Court is today concerned with matters of bankruptcy law and practice. It is
beyond the scope of this Decision to address other matters that may be implicated, such as
Idaho Rule of Professional Conduct 7.5(d), which provides: "Lawyers may state or imply
that they practice in a partnership or other organization only when that is the fact." The
Commentary to this Rule states that "lawyers sharing office facilities, but who are not in fact
associated with each other in a law firm, may not denominate themselves [in a way that]
suggests that they are practicing law together in a firm."

MEMORANDUM OF DECISION - 6

Martelle pays Swanson for his work "on a contract basis"[14] at a rate of $30.00 per hour. This is the rate that applies, for purposes of Martelle's payment to Swanson, when Swanson attends a debtor's § 341(a) meeting. However, Martelle admitted during hearing that the debtors would be charged at his $175.00 per hour rate for the time spent at the first meeting even if Swanson attended. Martelle ultimately conceded that this rate, which he admits is at the top end of the scale for Boise bankruptcy attorneys and which he argues is justified for his work on the basis of his experience and expertise in bankruptcy, commercial litigation and tax law, is not an appropriate rate for Swanson.[15]

## DISCUSSION AND DISPOSITION

That the described conduct would likely come under scrutiny should come as no surprise. *In re Castorena*, 270 B.R. 504, 529-31, 01.4 I.B.C.R. 153 (Bankr. D. Idaho 2001), stressed the importance of an attorney's attention to the duties of advising and representing debtor clients at their § 341(a) meetings and § 343 examinations, and this was reemphasized in *In re Lish*, 04.1 I.B.C.R. 34, 35 (Bankr.

---

[14]  Martelle indicates that this means no withholding is taken from Swanson's pay. *See* Case No. 04-01469, Doc. No. 21 at 2. While this calls to mind distinctions between employees and independent contractors, Martelle also indicates that "[c]lients are advised that Mr. Swanson *is employed by* Martelle Law Offices." *See* Case No. 04-01469, Doc. No. 22 at 3 (emphasis added).

[15]  The Court was provided with little information about Swanson, other than an indication from the chapter 13 trustees that he seemed prepared at the § 341(a) meetings in these cases and handled them competently. The Idaho State Bar website indicates he was admitted to practice in 1988. *See* http://www2.state.id.us/isb/mem/attorney_roster.asp (last visited Aug. 19, 2004). Court records do not show that he has filed any bankruptcy petitions for debtors as counsel of record. Martelle supplied no information about Swanson or his practice other than as indicated in this Decision. And, as noted, Swanson did not appear at hearing on the UST's motions, nor did he respond to those motions.

MEMORANDUM OF DECISION - 7

D. Idaho 2004).  Moreover, Bankruptcy Judge Jim D. Pappas has discussed, in a

clear and easily understood manner, many of the issues that can arise when

"substitute" counsel appear for debtors' attorneys at creditors' meetings.  *See* Hon

Jim D. Pappas, *Simple Solution = Big Problem*, 46 THE ADVOCATE 31 (Oct. 2003)

(official publication of the Idaho State Bar).

### A.  The UST's motions

The UST first argues that Martelle's and Swanson's conduct violates § 504 of

the Code.  That section provides:

> (a)  Except as provided in subsection (b) of this section, a
> person receiving compensation or reimbursement of expenses under
> section 503(b)(2) or 503(b)(4) of this title may not share or agree to
> share –
>  (1)  any such compensation or reimbursement with another
> person; or
>  (2)  any compensation or reimbursement received by
> another person under such sections.
>
> (b)(1)  A member, partner, or regular associate in a
> professional association, corporation, or partnership may share
> compensation or reimbursement received under section 503(b)(2) or
> 503(b)(4) of this title with another member, partner, or regular
> associate in such association, corporation, or partnership, and may
> share in any compensation or reimbursement received under such
> sections by another member, partner, or regular associate in such
> association, corporation, or partnership.
>  (2)  An attorney for a creditor that files a petition under
> section 303 of this title may share compensation and reimbursement
> received under section 503(b)(4) of this title with any other attorney
> contributing to the services rendered or expenses incurred by such
> creditor's attorney.

MEMORANDUM OF DECISION - 8

*See* 11 U.S.C. § 504(a), (b).[16]  The UST contends that, under the evidence, Martelle

shared compensation with Swanson, a separate attorney not a member, partner or

regular associate in Martelle's firm.  It submits that the consequences for violation

of the proscription on fee splitting should be denial of compensation and

disgorgement of payment by Swanson, and a reduction in any fees allowed

Martelle.  *See, e.g.*, Case No. 04-01469, Doc. No. 18 at 2; Doc. No. 23 at 4-6.

Second, the UST argues that Martelle's Rule 2016(b) statements are

incomplete and inadequate, as they do not explain that he will be delegating a part

of his duties or responsibilities to another attorney, or that he will be sharing

compensation with such attorney.  The UST argues that Martelle therefore has

failed to disclose adequately the nature and details of his representation.[17]  For

---

[16]  Sections 504(a) and (b) reference compensation or reimbursement received
under § 503(b)(2).  That section, in turn, refers to compensation and reimbursement
allowed under § 330(a).  Section 330(a)(4)(B) specifically provides that the Court may
award reasonable compensation to chapter 13 debtors' attorneys.  Section 504 thus applies
to these four cases.

[17]  The UST correctly notes that Martelle uses a form of disclosure that does not
provide the detail that is contained in Procedural Form B 203.  Martelle defended his
failure to use the recommended form by reason of inertia (*i.e.*, his form had not been
questioned over several years of use and he saw no need to reconsider or change it) and
accuracy (*i.e.*, once made aware of Form B 203's additional language, Martelle concluded
it was designed for those lawyers who wanted to exclude certain services from the scope of
their engagement and, since he excludes no services, the additional language and
explanation in B 203 was not necessary).  Neither explanation was particularly persuasive.
And neither accounted for the fact that use of Procedural Forms, though not strictly
required, is highly encouraged.  *See, e.g., In re Dearborn Constr. Co.*, 2002 WL 31941458,
at *11 n.30, 03.1 I.B.C.R. 17, 24 n.30 (Bankr. D. Idaho 2003) (noting use of "Official
Forms" is required under Fed. R. Bankr. P. 9009, but use of Procedural Form B 203 is
"encouraged"); *accord* LBR 4008.1, at Advisory Committee Notes (indicating use of
Procedural Form B 240 is "strongly recommended").

MEMORANDUM OF DECISION - 9

these failures, the UST argues a further reduction should be made to any compensation allowed Martelle.

Third, the UST argues that Swanson's failure to file any Rule 2016(b) statement at all in connection with his agreement to provide services to these four debtors supports disgorgement of any payment received and disallowance of any compensation.

### B. Sharing fees and § 504 violation

The prohibition in § 504(a) seems clear enough. "[A] person receiving compensation under § 503(b)(2)," which is, here, Martelle, "may not share or agree to share . . . such compensation with another person." 11 U.S.C. § 504(a)(1).

But Martelle argues that the prohibition should not apply to the present situation. In addition to arguing that he and Swanson find shelter in the "safe harbor" of § 504(b)(1), a contention discussed *infra*, Martelle submits that the abuses this Code prohibition was designed to prevent are not present here.

The reason for the proscription in § 504(a) of the Code was explained in a respected treatise as follows:

> Whenever fees or other compensation are shared among two or more professionals, there is incentive to adjust upward the compensation sought in order to offset any diminution to one's own share. Consequently, sharing of compensation can inflate the cost of a bankruptcy case to the debtor, and therefore to the creditors. . . . The potential for harm makes such arrangements reprehensible as a matter of public policy as well as a violation of the attorney's ethical obligations.

MEMORANDUM OF DECISION - 10

4 Resnick & Sommer, COLLIER ON BANKRUPTCY ¶ 504.01 at 504-3 (15th ed. rev. 2004).[18]  It is thus a "potential for harm" that supports an absolute prohibition. "[T]here can be do doubt that section 504(a) is intended to be mandatory and preemptory [sic]."  *Id.* at ¶ 504.02[1], 504-4.  So, arguments about whether harm exists or occurs in a particular case, or whether the fee splitting actually increased the cost to the debtor, are immaterial.

Violation of § 504(a) is dependent only upon a finding that the prohibited conduct occurred.  It does not also require a finding that such conduct actually defeated or compromised the policies underpinning the prohibition.  The Court finds the argument not well taken.[19]

### 1.    The exception of § 504(b)(1)

Martelle next, and primarily, argues that he and Swanson qualify under the exception in § 504(b)(1).  The contention is that Swanson, generally and in the context of these four cases, is a "regular associate" employed by Martelle and Martelle Law Offices.

---

[18]  It has also been observed that § 504 "manifests Congress' purpose to preserve the integrity of the bankruptcy process to the end that, among others, lawyers attend to their duty as officers of the bankruptcy court, which they clearly are, rather than to treat their interest in bankruptcy matters as matters of traffic."  *In re Matis*, 73 B.R. 228, 231 (Bankr. N.D.N.Y. 1987) (citing COLLIER).

[19]  Even if Martelle's argument were better founded or expressed, it is not for the Court to determine whether the approach taken in the statute is the best, or even an apt, vehicle for achieving the goals Congress has identified.  Rather, the Code must be enforced according to its terms.  *Accord Lamie v. United States Trustee*, ___ U.S. ___, 124 S.Ct. 1023, 1034 (2004) ("If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent.  'It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think . . . is the preferred result.'") (citation omitted).

MEMORANDUM OF DECISION - 11

The evidence establishes that Swanson and Martelle are not members of the same law firm. Rather, they are attorneys with separate firms and practices, even though they often work together.

> Subsection (b) of section 504 provides for limited exceptions applicable *to professional partnerships* and attorneys who contribute professional services in filing an involuntary petition under section 303. *Although section 504(b) permits a professional firm to apply as a single entity for a single fee that may be divided among firm members, the Code specifically prohibits arrangements for the sharing of fees between two professional firms.*

COLLIER ¶ 504.01[1] at 504-4 (emphasis supplied); *see also* ¶ 504.03[1][a] at 504-18 (the § 504(b)(1) exception for sharing of compensation with members, partners or associates is "narrowly construed" and "courts should look closely at the facts to determine whether an attorney is of counsel generally or has claimed that moniker solely to avoid the prohibition of section 504.").

In the face of these indications that the conduct here is not protected by the exception, Martelle directs the Court to Fed. R. Bankr. P. 9001(9), which defines "regular associate" as "any attorney regularly employed by, associated with, or counsel to an individual or firm." He argues that Swanson is an "attorney regularly employed by [or] associated with" Martelle Law Offices.

However, the contention advanced by Martelle founders by virtue of an incomplete reading of the statutory exception.[20] Section 504(b)(1) provides that "[a]

---

[20] To the extent Martelle relies on the language of Rule 9001(9) *to the exclusion of* the additional qualifying language of § 504(b)(1), the reliance is misplaced as it would give impermissible effect to the Rule. *See* 28 U.S.C. § 2075 ("[The Bankruptcy Rules] shall not abridge, enlarge, or modify any substantive right.").

MEMORANDUM OF DECISION - 12

member [*i.e.*, Martelle], partner, or regular associate in a professional association,

corporation or partnership [*i.e.*, Martelle Law Offices] may share compensation

with *another* member, partner, or regular associate *in such professional association,*

*corporation, or partnership.*" 11 U.S.C. § 504(b)(1) (emphasis supplied).

Notwithstanding whatever "regularity" exists in the "contract employment" of

Swanson by Martelle, there is no showing that Swanson and Martelle are jointly

engaged in practice in a professional association, corporation or partnership, or that

Swanson is a regular associate "in such professional . . . corporation."

    This interpretation of § 504(b)(1) is supported by the legislative history:

> Section 504 prohibits the sharing of compensation, or fee
> splitting, among attorneys, other professionals, or trustees. The
> section provides only two exceptions: *partners or associates in the*
> *same professional association, partnership, or corporation may share*
> *compensation inter se*. and attorneys for petitioning creditors that join
> in a petition commencing an involuntary case may share
> compensation.

H.R. Rep. No. 95-595, at 356 (1977), *reprinted in* U.S.C.C.A.N. 5963, 6311-12;

S. Rep. No. 95-989, at 67 (1978), *reprinted in* U.S.C.C.A.N. 5787, 5853 (emphasis

supplied). As the court stated in *Matis*:

> [W]hen Congress enacted Code § 504 to permit sharing of
> compensation, it intended that the term "professional association"
> refer to a recognized legal entity, under applicable state law, the
> members or employees of which have some identifiable legal
> relationship to one another, a relationship which would prevent the
> abuse inherent in fee splitting between unrelated professionals which
> Code § 504 is intended to prevent.

73 B.R. at 232. *See also* COLLIER ¶ 504.03[1][b] at 504-20 n.6 and accompanying

text (discussing *Matis*).

MEMORANDUM OF DECISION - 13

This conclusion is also supported by the analysis in *In re Greer*, 271 B.R.

426 (Bankr. D. Mass. 2002), one of the more recent of the few reported cases

addressing the issue.[21]  In that case, the court concluded that improper fee splitting

occurred between two lawyers, Soforenko and Fullwood, who shared office space

but were not members of the same firm.[22]  Soforenko paid Fullwood $50.00 for

every § 341(a) meeting at which she represented Soforenko's clients.  After the

question of violation of § 504 was raised, Soforenko placed Fullwood on the

Soforenko firm letterhead and, perhaps, added Fullwood to her malpractice

insurance.  Soforenko then sought to amend the Rule 2016(b) disclosure to assert

that Fullwood was "of counsel" to the firm.  The court was unpersuaded that

Fullwood was a member of, or of counsel to, Soforenko's firm either before or after

these curative attempts.  271 B.R. at 431-433.  Fullwood was instead found to be

---

[21]  This Court found no decisions from within the Ninth Circuit of assistance.
However, Bankruptcy Judge Randall J. Newsome of the Northern District of California,
sitting by designation, found in *In re ACandS, Inc.*, 297 B.R. 395 (Bankr. D. Del. 2003), that
the exception of § 504(b)(1) allowed "a member, partner or regular associate of a
professional association, corporation or partnership may share compensation *with such
persons in the same firm*, and the members of that person's firm may share in that
compensation." *Id.* at 405 (emphasis supplied).  In that case, the "attempts to downplay the
separate existence" of the sharing entity were rejected, and the court held that "a separate
entity . . . requires a separate retention application in order to avoid 'any illegal fee sharing
in this case.'" *Id.*  In *ACandS*, the § 327(a) approved professional had "subcontracted"
certain claim processing functions to a subsidiary limited liability company, which the
court found prohibited. *Id.* (citing *In re United Cos. Fin. Corp.*, 241 B.R. 521, 528 (Bankr.
D. Del. 1999).  For that reason, and because both the approved professional and the
subsidiary had  agreed to share fees, and drew on the debtor's prepetition retainer, the
court ordered disgorgement of $2.4 million in fees.  297 B.R. at 405.

[22]  "Office sharing" seems to be a common thread, not only appearing here but also
presented in *Matis*. *See* 73 B.R. at 232-33. *See also* COLLIER ¶ 504.03[1][b] ("Sharing
Office Space Does Not Create Partnership for Compensation Sharing Purposes."), at 504-19
(discussing *Matis*).

MEMORANDUM OF DECISION - 14

"an independent attorney contracting to represent Soforenko's clients at 341 meetings." *Id.* at 432. The two lawyers were found to be "independent co-counsel." *Id.*

The Court finds *Greer* to be directly applicable to the instant situation. Martelle attempts to distinguish *Greer* on the basis that the court was there concerned with whether Fullwood was "of counsel" to or a member in Soforenko's firm, and not whether she was a "regular associate" employed by Soforenko. The attempt is not persuasive. Under the Code and prevailing analysis, the sharing person must be a member (or of counsel) "*in such* association, corporation or partnership."[23] There is no basis to conclude that regular associates sharing compensation escape this same condition or limitation. The Court rejects the suggestion that under Rule 9001(9) or the case law, an associated attorney *outside such* firm can qualify if employed by the firm on a sufficiently regular or recurring basis.[24]

---

[23]   *Accord Matis*, 73 B.R. at 232 ("Thus, it is to be assumed that when Congress enacted Code § 504 . . . it intended that the term 'professional association' refer to a recognized legal entity, under applicable state law, the members or employees of which have some identifiable legal relationship to one another, a relationship which would prevent the abuse inherent in fee splitting between unrelated professionals[.]")

[24]   Martelle at oral argument conceded that a firm employing an attorney on a "contract" basis to cover a single § 341(a) meeting would not qualify for protection even under his reading of the § 504(b)(1) and Rule 9001(9). But he could not identify when the number of covered meetings or their frequency would evidence enough "regularity" of engagement for the exception to apply, other than to assert that, whatever the benchmark, he and Swanson cleared it. This illustrates the difficulty with Martelle's suggested interpretation of the exception.

MEMORANDUM OF DECISION - 15

The requirements of the § 504(b)(1) exception are not met in the instant cases. Therefore, the sharing of compensation by Martelle and Swanson was and is improper and prohibited. 11 U.S.C. § 504(a). The UST requests that, as a consequence of this violation, Swanson be denied any compensation and be ordered to disgorge to the chapter 13 trustees all payments he received, and that Martelle's fees be reduced in each case by $250.00. *See, e.g.,* Case No. 04-01469, Doc. No. 23 at 4-5. The requested relief will be granted.[25]

### C. Martelle's inadequate disclosure, and the reasonableness of his fees

Martelle did not disclose in the Rule 2016(b) statements he filed in these cases that he would be sharing his compensation with Swanson. In fact, Martelle therein affirmatively indicated that he had not agreed to share compensation with any person. This was not accurate.

Martelle's disclosure also made no mention of the fact that he would not be providing all the necessary services to the debtors.[26] That someone else would

---

[25] Today's Decision addresses only the bankruptcy consequences of the violation of § 504 and the lack of compliance with Rule 2016(b). However, the Court notes that the Idaho Rules of Professional Conduct also appear to be implicated. IRPC 1.5(e) provides that a division of fees between lawyers not in the same firm will be proper only if (1) the division is in proportion to the services performed, (2) the client agrees to the arrangement, including the share each lawyer is to receive, and the agreement is confirmed in writing, and (3) the total fee is reasonable. As there was no proof here that the debtors ever had a written agreement at all, and given the Court's conclusion that the total fee charged could not be reasonable if Swanson's services were billed to the debtors at an effective $175.00 per hour rate, there appear to be issues under IRPC 1.5(e). These questions are in addition to those under IRPC 7.5 that were noted earlier.

[26] Recall that Martelle justified his lack of use of Procedural Form B 203 in part on the idea that he would not exclude or contract away any of the required services in the bankruptcy case. *See* note 17 *supra.*

MEMORANDUM OF DECISION - 16

provide the debtors with representation at their § 341(a) examinations is a material matter, and one directly related to the reasonableness of Martelle's requested compensation. *See Lish*, 04.1 I.B.C.R. at 35. The anticipated delegation of this fundamental duty of debtor's representation needed to be disclosed if known at the time of the filing of the Rule 2016(b) statement.[27]  Lack of disclosure under Rule 2016(b) has consequences independent of § 504. *See, e.g., Dearborn Constr.*, 03.1 I.B.C.R. at 23 (citing *Neben & Starrett, Inc. v. Chartwell Fin. Corp. (In re Park-Helena Corp.)*, 63 F.3d 877, 882 (9th Cir. 1995) (other citations omitted).

Moreover, Martelle's compensation under § 330(a)(4)(B) is premised on services he actually performs in the chapter 13 case.  He cannot be allowed compensation for services he does not perform, and this certainly includes charges for creditors' meetings he does not attend.[28]

In exercising its discretion regarding the allowance of reasonable compensation to Martelle under § 330(a)(4)(B) and the balance of § 330 incorporated thereby, the Court considers the totality of the facts.  Here, Martelle

---

[27]  The Court acknowledges that Martelle indicated his debtor clients are advised that Swanson may appear at § 341(a) meetings. This is essential. *See, e.g.,* IRPC 1.2(c); IRPC 1.4(a)(1), (a)(2), (a)(3), and (b). But disclosure to the client, however salutary, does not eliminate the need for the disclosures to the Court and parties in interest mandated by the Bankruptcy Code and Bankruptcy Rules.

[28]  The Court was surprised to learn at hearing that Martelle would charge his clients $175.00 per hour for services related to the creditors' meeting *even if* Swanson were the lawyer attending. The charge cannot be justified. Even if Swanson were a member of Martelle's firm and his services could properly be billed, the amount by which this charge would be *prima facie* unreasonable is the difference between $175.00 per hour and whatever a reasonable hourly rate would be for services performed by someone with Swanson's experience and abilities. The evidence herein would not allow the Court to determine such an appropriate rate for Swanson's services.

MEMORANDUM OF DECISION - 17

did not attend the creditors' meetings. His use of a substitute was not properly disclosed, and his payment of the substitute violated § 504. And this was not a situation where Martelle made candid disclosures to the Court or interested parties under § 329(a) or Rule 2016(b) about what he was doing or why he thought it proper. Instead, it was the trustee's identification of the issue in filings related to a confirmation hearing that alerted the Court, led to the Court's questioning regarding the practice and, it appears, generated the UST's motions. But considered, too, is the fact that the Court has already concluded a reduction in compensation will be made for the violation of § 504.

The UST requested at hearing that an additional 10% reduction in compensation be made. Such a reduction is determined by the Court to be appropriate and proportional.[29] Therefore, in addition to the reduction imposed for violation of § 504, *supra*, the Court will further reduce Martelle's allowed compensation in each case by $100.00, representing 10% of the minimum fee charged. Of course, Martelle will not be allowed to charge these debtors for the creditors' meeting, nor for any of the time he spent relative to the UST's motions.[30]

---

[29] *See In re Combe Farms, Inc.*, 257 B.R. 48, 53-54, 01.1 I.B.C.R. 7 (Bankr. D. Idaho 2001) (finding it essential that the Court not simply excuse counsel when Code and Rule compliance falls short, and reducing compensation based upon such failure).

[30] This results in a $350.00 reduction in compensation for Martelle, imposed in each of the four cases. Some of these cases are ready for confirmation. The Court will enter confirmation orders that indicate, by interlineation, counsel's fees will be set by separate order. Martelle will be required to file a fee affidavit in each case, specifying the time he spent in rendering services (excluding the creditors' meeting and time spent responding to the UST). The total will then be reduced in accord with the instant Decision. The balance remaining will be allowed under a separate order, which the UST and the
(continued...)

MEMORANDUM OF DECISION - 18

### D. Swanson's lack of disclosure

Swanson faces his own problems. He participated in an improper and prohibited sharing of compensation previously received by Martelle. *See* 11 U.S.C. § 504(a)(2). For that reason, the Court has above denied his compensation and granted the UST's request that Swanson disgorge to the appropriate chapter 13 trustee all payments he received.

Additionally, Swanson, once he agreed to represent these bankruptcy debtors in connection with their cases, was affirmatively obligated to file his own Rule 2016(b) statement in each case. Swanson's failure to file a proper Rule 2016(b) disclosure within fifteen days of payment or agreement presents a problem independent of his and Martelle's violation of § 504.

Liability for inadequate or incomplete disclosure under Code and Rule requirements includes the loss of the right to compensation and disgorgement of fees paid, even if the failure was inadvertent. *See Lish*, 04.1 I.B.C.R. at 35; *Dearborn Constr.*, 03.1 I.B.C.R. at 23. But, since Swanson has already been denied any compensation in these four cases and required to disgorge the payments of $30.00 per case he received, further sanction is not imposed.[31]

---

[30](...continued)
chapter 13 trustee shall endorse. If there is compensation left owing to Martelle, it may be paid by the trustee under the confirmed plan. If a credit balance is due debtor(s), it shall be paid to them by Martelle. Any subsequent fees in these cases will be paid through the plans after allowance on application, notice and hearing.

[31] Since Swanson neglected to respond at all to the UST's motions or to appear at hearing, one might wonder if he takes the issues seriously. Still, no additional penalties are
(continued...)

AO 72A
(Rev. 8/82)

## CONCLUSION

The UST's motions are granted as above set forth.  Orders shall be prepared

and submitted by the UST for the Court's entry

DATED this 25th day of August, 2004.

TERRY L. MYERS
CHIEF U.S. BANKRUPTCY JUDGE

---

[31](...continued)
deemed necessary at this time.  If the conduct is not remedied or if other violations of the
Bankruptcy Code or Rules occur, the consequences may be stiffer than the $120.00
forfeited in these cases.

MEMORANDUM OF DECISION - 20

## CERTIFICATE OF SERVICE

I, the undersigned, hereby certify that I served by the method indicated below, a true copy of the document to which this certificate is attached, to the following named person(s) at the following address(es), on the date shown below:

DATED: August 25, 2004

Case Nos. 04-01469 (Gary J. Peterson); 04-01577 (Robert W. Whittle); 04-01748 (Robert A. House) and 04-01851 (Anthony L. Craft)

Office of the U.S. Trustee
MK Central Plaza
720 Park Blvd., Suite 220
Boise, ID 83712
jeff.g.howe@usdoj.gov
gary.mcclendon@usdoj.gov
  □ U.S. Mail   □ Facsimile   ✓ Email

Martin Martelle
Attorney at Law
82 East State Street, Suite E
Eagle, ID 83616
  ✓ U.S. Mail   □ Facsimile   □ Email

Gregory Swanson
Attorney at Law
82 East State Street, Suite F
Eagle, ID 83616
  ✓ U.S. Mail   □ Facsimile   □ Email

Bernie R. Rakozy
P.O. Box 1738
Boise, ID 83701
brrakozy@mindspring.com
  □ U.S. Mail   □ Facsimile   ✓ Email

John H. Krommenhoek
P.O. Box 8358
Boise, ID 83707
jhk713bk@spro.net
  □ U.S. Mail   □ Facsimile   ✓ Email

*JoAnn B. Canderan*

JoAnn B. Canderan
Judicial Assistant to Judge Myers

Note to Email service: A PDF version of the above decision/order was electronically transmitted to the parties indicated above. Email service is provided as a courtesy only upon request of a party. To review an electronic image of the original of this document, or to subscribe for email service of future decisions/orders from the Bankruptcy Judge, please access the Court's Internet web site, www.id.uscourts.gov.

MEMORANDUM OF DECISION - 21